UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ABRAHAM AMIN,

                           Petitioner,                   **MEMORANDUM & ORDER**
                                                                             10-CV-2293 (PKC)

        - against -

WILLIAM F. HULIHAN, Superintendent,

                           Respondent.

-------------------------------------------------------X

PAMELA K. CHEN, United States District Judge:

       Abraham Amin ("Petitioner"), appearing *pro se*, petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his February 28, 2007 conviction following a plea of guilty to one count of Manslaughter in the First Degree in the Supreme Court of the State of New York, Queens County. On March 29, 2007, Petitioner was sentenced to 12-1/2 to 25 years. Petitioner challenges his conviction on two grounds: (1) the State court improperly denied his request for a *Dunaway* suppression hearing, and (2) the State court failed to properly assess Petitioner's mental competence at the time of the offense and during the prosecution. For the reasons set forth below, the petition for a writ of *habeas corpus* is denied in its entirety.

## BACKGROUND

**A. Relevant Facts**[1]

       On July 24, 1998, at approximately 9:00 a.m., Petitioner stabbed his fiancée, Dorota Wisniewska (the "victim"), over 15 times in the chest and abdomen inside the apartment they

---

[1] Given Petitioner's conviction, the Court recites relevant facts in the light most favorable to the prosecution. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

shared. (*See* Dkt. 13 (Decl. of Ayelet Sela ("Sela Decl.")) ¶ 4.) At approximately 9:26 a.m., Petitioner called 911. (*Id.*) Petitioner told the operator: "Please . . . someone got killed in here, please I need help. Okay, 80 dash 08 Austin Street. There was an argument and she . . . now she's dying . . . please call ambulance." (Dkt. 14-2 at ECF 16 ("Section 710.30 Notice").[2]) When the police arrived at the scene, Petitioner, who was wearing a blood-soaked t-shirt and a pair of underwear, directed them to the victim. (Sela Decl. ¶ 4.) The victim was lying face down on the bathroom floor covered in blood from multiple stab wounds. (*Id.*) There were no signs of forced entry and no other individuals present; Petitioner offered no explanation for the injured and bleeding woman in the apartment. (*Id.*) The officers subsequently recovered a 12-inch kitchen knife on the bedroom floor. (*Id.*) The victim died at the hospital. (*Id.*)

The officers arrested Petitioner and removed him to the Queens General Hospital Center, where he was treated for stab wounds on his leg and ankle. (*Id.*) At around 11:20 a.m. at the hospital, Detective Louis Pia of the Queens Homicide Squad issued *Miranda* warnings to Petitioner. (*Id.*) After receiving the *Miranda* warnings, Petitioner told Detective Pia that he lived with his fiancée, Dorota; that he woke up at around 8:00 or 9:00 a.m. and immediately observed his fiancée lying in the bathroom bleeding; and that he called 911. (Section 710.30 Notice.) When asked how he was injured, the defendant stated he "really did not remember." (*Id.*)

B. **Pretrial Proceedings**

1. **Request for Pre-Trial Suppression Hearings**

On August 3, 1998, Petitioner was indicted on two counts of Second Degree Murder and

---

[2] Section 710.30 of the New York Criminal Procedure Law ("CPL") requires the People to notify a criminal defendant of statements made by the defendant to the police that the People intends to introduce at trial. "ECF" refers to the page number generated by the Electronic Court Filing system rather than the document's internal pagination.

one count of Criminal Possession of a Weapon in the Fourth Degree. (Sela Decl. ¶ 7.) On November 19, 1998, the People served notice on Petitioner, pursuant to CPL § 710.30, of his two oral statements to police: the 911 call from the morning of July 24, 1998 and his post-arrest statements to the police at the hospital. (Section 710.30 Notice.)

On May 19, 1999, Petitioner, represented by counsel, filed an omnibus motion requesting the following relief: (1) dismissal of the indictment on the grounds that the evidence before the Grand Jury was not legally sufficient or, in the alternative, for an order reducing any charge where the evidence was only sufficient to support a lesser charge; (2) release of the grand jury minutes to defense counsel; (3) appointment of an investigator; (4) a Bill of Particulars; and (5) *Dunaway*/*Huntley* and *Sandoval* hearings.[3] (Dkt. 14 at ECF 2-3 ("Notice of Omnibus Motion").) With respect to the request for a *Dunaway/Huntley* hearing, Petitioner's counsel asserted that there was no probable cause at the time of Petitioner's arrest because the only information the police had when they arrested him was that Petitioner "found his fiancée lying in a bathroom, bleeding, and he phoned for an ambulance." (Dkt. 14 at ECF 10 ("Aff. In Support of Omnibus Motion").) Petitioner's counsel further asserted that Petitioner was never given any *Miranda* warnings after he was arrested and that his knowledge of English was insufficient to allow for clear communication with the arresting officers. (*Id.*)

---

[3] A *Dunaway* hearing "is used to determine whether probable cause existed for a criminal defendant's arrest, [where] statements given by a suspect who is arrested without probable cause must be suppressed" under the Fourth Amendment. *Ortiz v. Ercole*, No. 07-CV-4667, 2010 WL 1688444, at * 1 n.1 (E.D.N.Y Apr. 26, 2010). "A *Huntley* hearing is used in New York to suppress statements made to law enforcement on the ground that the statement was coerced or that the defendant was never advised of the constitutional right to remain silent." *Id.* n.2. A *Sandoval* hearing is used to allow defendants "to obtain a prospective ruling as to which portions of a defendant's prior record can be used at trial by the prosecution for impeachment should the defendant testify." *Monko v. Senkowski*, No. 97-cv-2895, 2016 WL 373962, at *2 n.1 (E.D.N.Y. Jan. 29, 2016) (citing *People v. Sandoval*, 34 N.Y.2d 371 (1974)).

In an Order dated May 27, 1999, Judge Robert J. Hanophy held that there was sufficient legal evidence to sustain the indictment and denied the motion to dismiss. (Dkt. 14 at ECF 30 ("Order on Omnibus Motion").) Judge Hanophy granted Petitioner's request for a *Huntley* hearing as to the statements made to the police in the hospital; however, he denied Petitioner's request for a *Huntley* hearing with respect to the 911 call and Petitioner's request for a *Dunaway* hearing. (*Id.* at ECF 31.) In so ruling, the court noted that Petitioner failed to allege that his statements to the 911 operator were involuntary so as to require a *Huntley* hearing, and that the request for a *Dunaway* hearing similarly failed "to contain sworn allegations of fact supporting, as a matter of law, the grounds alleged in accordance with C.P.L § 710.60." (*Id.*) Finally, Judge Hanophy granted Petitioner's request for a *Sandoval* hearing. (*Id.*)

### 2. Mental Competence Issues

Before any trial could be held, the Court repeatedly found Petitioner unfit to stand trial.[4] (*See, e.g.*, Dkt. 14 at ECF 33-35 (Jan. 12, 1999 Hr'g Tr.); 36-39 (Dec. 2, 1999 Hr'g Tr.); 40-51 (Mar. 7, 2001 Hr'g Tr.); 52-69 (Sept. 25, 2001 Hr'g Tr.); 74-76 (June 6, 2003 Hr'g Tr.); 77-78 (July 21, 2003 Hr'g Tr.); 83-87 (July 29, 2004 Hr'g Tr.); 88-89 (Oct. 21, 2004 Hr'g Tr.).) Between January 12, 1999 and February 28, 2007, the court held eleven competency hearings and ordered several psychiatric examinations to determine Petitioner's fitness to proceed. During that time, Petitioner was held in various mental health facilities, and was only found competent on three occasions: January 13, 2003; January 26, 2004; and August 10, 2005. (*See* Dkt. 14 at ECF 70-73 (Jan. 13, 2003 Hr'g Tr.); 79-82 (Jan. 26, 2004 Hr'g Tr.); Dkt. 14-2 at ECF 1 (Aug. 10, 2005 Hr'g

---

[4] At a January 26, 2004 hearing, the trial court described fitness as "sufficient knowledge of the background of the case that he can make choices, help [his attorney] make choices, decide whether to plead guilty or not guilty or not responsive and decide whether to testify or not testify, whether to waive a jury or not waive a jury, and have sufficient and meaningful involvement with [his attorney] to assist [the attorney] and to withstand the rigors of a trial." (Dkt. 14 at ECF 81.)

4

Tr.).)

### C. Plea and Sentencing

On February 28, 2007, after the court found Petitioner fit to stand trial, he pled guilty on February 28, 2007 to Manslaughter in the First Degree, N.Y. Penal Law § 125.20. (Dkt. 14-2 at ECF 4-15 (Plea Hr'g Tr.).) Petitioner allocuted as follows: "I stabbed Dorota numerous times to cause harm and she died, and she died from the stabbing." (*Id.* at ECF 13.) Petitioner waived his right to appeal his conviction and sentence, both orally in court and by signing a written waiver. (*Id.* at ECF 14; *see also* Dkt. 14-3 at ECF 82 (Waiver of Right to Appeal).) On March 29, 2007, Petitioner was sentenced to 12-1/2 to 25 years. (Dkt. 14-2 at ECF 25 (Sentencing Hr'g Tr).)

### D. Direct Appeal

On March 14, 2008, Petitioner appealed his conviction through assigned appellate counsel, raising two issues: (1) whether the trial court's summary denial of his motion for a *Dunaway* hearing deprived him of his constitutional right to due process and to be free from illegal searches and seizures; and (2) whether his sentence should be reduced in the interest of justice, based on his lack of a criminal record and history of mental illness. (Dkt. 14-2 at ECF 27 (Brief for Appellant).) On July 29, 2008, the Appellate Division denied Petitioner's appeal, finding that he had "knowingly, voluntarily, and intelligently waived his right to appeal," and holding that "[i]nasmuch as the issues he seeks to raise are encompassed within that valid waiver, we will not review them." *People v. Amin*, 860 N.Y.S.2d 917 (App. Div. 2008). On September 29, 2008, the New York Court of Appeals denied leave to appeal. *People v. Amin*, 896 N.E.2d 97 (2008).

### E. State Collateral Attack

On May 13, 2009, Petitioner moved *pro se* to vacate his conviction pursuant to CPL § 440.10. (Dkt. 14-2 at ECF 88 ("440 Motion").) Petitioner claimed that his guilty plea was

5

involuntary because he had received ineffective assistance of counsel. Specifically, Petitioner alleged that "his attorney failed to advise him both of the affirmative [defense] provided in Penal Law §40.15 [Mental disease or defect] and that the ultimate decision of whether to plead guilty or assert the defense at trial belonged to him alone." (Dkt. 14-3 at ECF 89-90 (Order Denying 440 Motion).) Petitioner asserted that had he known the decision to plead guilty was his, there was "more than a 'reasonable probability'" he would have chosen to proceed to trial. (Dkt. 14-3 at ECF 2 (Aff. in Support of 440 Motion).) Petitioner also claimed ineffective assistance of counsel on the basis that his lawyer never conducted a *Huntley* hearing as permitted by the trial court, nor challenged its denial of a *Dunaway* hearing. (*Id.* at ECF 2-3.)

On December 22, 2009, Judge Hanophy denied Petitioner's 440 Motion. (Order Denying 440 Motion.) The judge noted as an initial matter that Petitioner's waiver of his right to appeal did not waive any claims relating to the voluntariness of his plea. (*Id.* at ECF 90.) However, Judge Hanophy found that Petitioner's allegations were unsupported by evidence and contradicted both by both the plea minutes and the affidavit and notes of Petitioner's trial counsel. (*Id.*) The court noted that at the plea hearing, both Petitioner and his trial counsel confirmed on the record that they had discussed "all the various aspects of the case," including affirmative defenses and the decision to plead guilty. (*Id.*) The court also noted that defense counsel's contemporaneous notes referenced discussions in which counsel informed Petitioner of the merits of available options, including an insanity defense, and that Petitioner's counsel secured for him an advantageous plea deal. (*Id.*) The court also noted that Petitioner had had two lawyers over the course of the case, making it unlikely that both had neglected to inform Petitioner of an affirmative defense based on his mental competency. (*Id.* at ECF 91.) Furthermore, the court found that Petitioner provided no support for the claim that had he been advised differently, he would not have pled guilty. Finally,

the court held that Petitioner forfeited any claim based on his counsels' handling of the *Dunaway* and *Huntley* hearings when he pled guilty, and that "[i]n any event, the defendant failed to show that counsel lacked 'strategic or other legitimate explanations for such decisions.'" (Dkt. 14-4 at ECF 1 (citations omitted).) Petitioner did not seek leave to appeal the denial of his 440 Motion.

### F. Instant Petition for Writ of *Habeas Corpus*

On May 14, 2010, Petitioner timely submitted the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. (Dkt. 1.) Liberally construing his papers, Petitioner raises two grounds for *habeas* relief.[5] First, Petitioner contends that the summary denial of his motion for a *Dunaway* hearing deprived him of his rights under the Fourth and Fourteenth Amendments. (Dkt. 1 at ECF 5.) Second, in a later submission that this Court will construe as a supplemental petition, Petitioner contends that given his history of mental illness: (i) an expert clinician should have evaluated him and produced a written report regarding his mental state and ability to help with his own defense; (ii) a hearing should have been held pertaining to Petitioner's mental state at the time of the crime; and (iii) either Petitioner's counsel or the prosecutor should have requested that Petitioner be seen by a psychiatrist for an assessment of his mental capacity. (Dkt. 7.)

Respondent contends that the Petition should be denied because all of Petitioner's claims are either unexhausted, procedurally barred, or meritless. (Dkt. 13.)

---

[5] The Court construes Petitioner's *pro se* petition in the light most favorable to him. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (requiring courts to hold *pro se* pleadings to less stringent standards); *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 472 (2d Cir. 2006) (the Court is obligated to construe a *pro se* petition to "raise the strongest arguments" it suggests).

# DISCUSSION

## A. STANDARD OF REVIEW

A *habeas corpus* petition is not a vehicle to re-litigate every issue previously determined in State court. *Herrera v. Collins*, 506 U.S. 390, 401 (1993). Rather, a State prisoner seeking *habeas* relief under 28 U.S.C. § 2254 ("Section 2254"), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Under Section 2254, a petitioner must show that the State court decision, having been adjudicated on the merits, is either: (1) "*contrary to*, or involved *an unreasonable application of*, *clearly established Federal law*, as determined by the Supreme Court of the United States," *or* (2) "based on *an unreasonable determination of the facts* in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (emphasis added).

As to the former, "clearly established law" is defined as "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A State court decision is "contrary to" clearly established law if the State court: (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court has on a set of "materially indistinguishable" facts. *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013) (quoting *Williams*, 529 U.S. at 405). Under the "unreasonable application" clause, a federal *habeas* court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409; *see also id.* at 410 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.") (emphasis in original); *Grayton v. Ercole*, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state

court's application of the law was not only wrong, but unreasonable."). A federal *habeas* court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

As to *habeas* challenges based on a State court's "unreasonable determination of the facts," Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1).

Section 2254 thus embodies a "'difficult to meet' . . . and 'highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington*, 562 U.S. at 102; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). But if "a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." *Williams*, 529 U.S. at 389.

### B. PROCEDURAL DEFAULT AND EXHAUSTION

Under Section 2254, as amended by AEDPA, a petitioner must comply with certain procedural requirements when filing an application for a writ of habeas corpus. While Petitioner's claims are timely, the Court finds that they are either procedurally defaulted or otherwise not cognizable on *habeas* review.

#### 1. Relevant Law

##### i. Procedural Default

A federal court generally is precluded from reviewing a *habeas* claim if the State court's prior denial of that claim rests on an adequate and independent State ground. *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1971). A petitioner's

9

failure to comply with a state procedural rule qualifies as an adequate and independent State ground, provided that (i) the State court actually "relied on the procedural bar as an independent basis for its disposition of the case," *Harris*, 489 U.S. at 261-62 (internal quotation marks and citation omitted), and (ii) the State procedural rule is "firmly established and regularly followed." *See Cotto v. Herbert*, 331 F.3d 217, 239–40 (2d Cir. 2003). A State court's express reliance on a procedural ground as one basis for the denial of the claim precludes *habeas* review, even if the State court proceeds to consider the merits of the claim. *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996); *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).

Nevertheless, a petitioner may obtain federal *habeas* review of a procedurally-defaulted claim, if the petitioner demonstrates either "cause for the default and actual prejudice," or that "failure to consider the claims will result in a miscarriage of justice (*i.e.*, the petitioner is actually innocent)."[6] *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991)); *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). To establish cause for a procedural default, a petitioner must show "some objective factor external to the defense" that explains why he did not previously raise the claim. *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must demonstrate that the failure to raise the claim previously had a substantial injurious effect on the petitioner's case such that he was denied fundamental fairness. *Reyes v. New York*, No. 99-cv-3628, 1999 WL 1059961, at *2 (S.D.N.Y. Nov. 22, 1999) (citing *Murray*, 477 U.S. at 494).

### ii. Exhaustion

Relatedly, AEDPA requires that a petitioner exhaust each claim he wishes to raise in

---

[6] A claim of actual innocence must be supported by "new reliable evidence" and is therefore "rarely successful." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

federal court by first seeking remedies that may be available in the courts of the State in which he was convicted or, alternatively, demonstrate that "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. 2254(b)(1)(B). Exhaustion demands that claims be presented to each level of the State courts, so that the State is first given the opportunity to review the merits of the federal constitutional claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (concluding that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by involving one complete round of the State's established appellate review process"). The exhaustion requirement ensures that "state courts receive a legitimate opportunity to pass on a petitioner's federal claims and that federal courts respect the state courts' ability to correct their own mistakes." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005). Consistent with this principle, "a state prisoner [must] present the state courts with the same claim he urges upon the federal courts." *Pickard v. Connor*, 404 U.S. 270, 276 (1971). In other words, a petitioner must "fairly present" both the factual and legal premises of his federal claims to the State court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003).

A federal court may "deem" an otherwise unexhausted claim to be exhausted if it would be procedurally barred in the State court in which the petitioner would be required to present the claim. *Coleman*, 501 U.S. at 735 n.1; *Aparicio*, 269 F.3d at 90. In that circumstance, although the petitioner technically will have satisfied the exhaustion requirement, he also will have procedurally defaulted his claim, thus preventing the federal court from reaching the claim's merits, unless, once again, the petitioner can show either cause for the default and resulting prejudice, or actual innocence. *See Sweet v. Bennett*, 353 F.3d 135, 139, 141 (2d Cir. 2003).

### 2. Application of *Habeas* Law to Facts of this Case

#### i. Petitioner's Fourth Amendment Claim Is Procedurally Defaulted

Petitioner argues that his Fourth Amendment rights were violated when he was denied a *Dunaway* hearing for having failed to make sufficient sworn factual allegations that would justify the holding of a hearing. Petitioner's challenge is procedurally barred, since the Appellate Division denied this very claim on direct appeal on an adequate and independent state ground: it held that it was precluded from reviewing the claim because Petitioner had validly waived his right to appeal pre-trial motions when he pled guilty. *See Amin*, 860 N.Y.S.2d at 918 ("The defendant knowingly, voluntarily, and intelligently waived his right to appeal. Inasmuch as the issues he seeks to raise are encompassed within that valid waiver we will not review them.").

"Courts in this circuit have consistently held that a petitioner's waiver of the right to appeal is an adequate and independent state ground for denying habeas corpus relief." *Guaman v. Racette*, No. 14-cv-5160, 2016 WL 901304, at *5 (S.D.N.Y. Feb. 5, 2016) (citing *Alvarez v. Yelich*, 09-cv-01343, 2012 WL 2952412, at *5 (E.D.N.Y. July 17, 2012) (collecting cases); *Burvick v. Brown*, No. 10-cv-5597, 2013 WL 3441176, at *6 (E.D.N.Y. July 9, 2013) ("Federal courts have held that New York law allowing defendants to waive their right to appeal as part of a plea agreement, as long as the waiver is made voluntarily and is knowing and intelligent, is an adequate and independent state ground that bars *habeas* review, and this Court agrees with those decisions.") (citing cases)). Petitioner does not contend that his waiver of the right to appeal was anything but voluntary, knowing, and intelligent, and the record demonstrates that it was. Petitioner executed a written waiver of appeal in open court with the assistance of his attorney. The Court finds that this written waiver, coupled with the judge's instructions, gave Petitioner sufficient notice of the

12

appeal rights he was surrendering.[7] *People v. Schmidt*, 869 N.Y.S.2d 648, 649 (App. Div. 2008) ("County Court's admonitions, together with the written waiver in the record, sufficiently informed defendant of his rights.") (quoting *People v. Lewis*, 851 N.Y.S.2d 295, 297 (App. Div. 2008)); *People v. Easter*, 995 N.Y.S.2d 852, 853 (App. Div. 2014).

Thus, Petitioner's claim is procedurally barred and is reviewable only if Petitioner can demonstrate cause for the default and prejudice resulting therefrom, or show that he is actually innocent of the crime for which he was convicted. In this case, Petitioner can do neither. Petitioner has never claimed to be innocent and, in fact, stated under oath at his plea proceeding that he "stabbed Dorota numerous times to cause harm and she died." (Plea Hr'g Tr. at ECF 12.) The other undisputed evidence overwhelmingly corroborates Petitioner's guilt: police officers found Petitioner and a bleeding, severely injured victim in the couple's shared apartment; Petitioner's clothes were bloody, and he had lacerations on his chin, right lower leg and scratches on both ankles; Petitioner gave no explanation for the scene; there was no one else present in the apartment; and there was no forced entry.

Petitioner also cannot demonstrate cause for the default since, as noted above, the record shows that his waiver of the right to appeal was knowing and voluntary. *See Alvarez*, 2012 WL 2952412, at *5 ("Since petitioner's waivers of his right to appeal were knowing and voluntary, he

---

[7] At the plea hearing, Judge Hanophy instructed Petitioner as follows: "Mr. Amin, I will tell you in general that you are waiving everything that you can constitutionally waive, you understand that . . . . All right, have you signed this form entitled waiver of right to appeal; have you signed this form voluntarily and knowingly after being advised of your appellate rights by both myself and your attorney beside you?" (Plea Hr'g Tr. at ECF 14-15.) Petitioner responded in the affirmative. (*Id.*) Similarly, the written waiver of appeal provided: "[t]he waiver applies to all issues that may be validly waived. This includes but is not limited to any issue regarding the effectiveness of counsel prior to my plea in this case and any issue that may arise with regard to the imposition of sentence . . . . In addition to the above issues, my waiver also includes, but is not limited to the following issues: arraignment, *pre-trial motions*, speedy trial and all criminal proceedings up to and including the plea of guilt." (Waiver of Rights (emphasis added).)

13

has not demonstrated cause for the procedural default."). Nor can Petitioner demonstrate prejudice. *See DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004) (prejudice depends on whether there is a reasonable probability that, but for the default, the outcome of the proceeding would have been different). In this case, it is exceedingly improbable that the grant of a *Dunaway* hearing would have changed the result and spared Petitioner a conviction. Based on the undisputed evidence discussed above, the officers who arrived at the crime scene had ample reason to believe that Petitioner had committed the stabbing, and the trial court very likely would have found probable cause for the arrest,[8] and denied Petitioner's motion to suppress his subsequent *Mirandized* statements.

In sum, this Court finds that Petitioner's informed waiver of his right to appeal any issue relating to his pre-trial motions is an independent and adequate state law ground upon which the State court denied Petitioner's appeal challenging the denial of a *Dunaway* hearing, and Petitioner has failed to show a potential miscarriage of justice or cause and prejudice. Accordingly, Petitioner's *Dunaway* hearing claim is procedurally barred from federal *habeas* review.

### ii. In Any Event, Petitioner's Fourth Amendment Claim Is Not Cognizable On *Habeas* Review

Moreover, even if Petitioner's challenge to the state court's denial of a *Dunaway* hearing were not procedurally defaulted, it would not be cognizable on federal *habeas* review in light of the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, federal *habeas* relief is not available when a petitioner claims that "evidence produced at trial was the result of an

---

[8] "Probable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed . . . . The legal conclusion is to be made after considering all of the facts and circumstances together. Viewed singly, these may not be persuasive, yet when viewed together the puzzle may fit and probable cause found." *People v. Bigelow*, 488 N.E.2d 451, 455 (N.Y. 1985) (citations omitted).

unconstitutional search and seizure, unless the state denied [him] an opportunity for full and fair litigation of the claim." *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991). Thus, a Fourth Amendment claim can be addressed on federal *habeas* review only when (a) the State has provided no corrective procedures to redress the alleged Fourth Amendment violations, or (b) there is a corrective mechanism, but the defendant was unable to use it because of an "unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)).

Here, Petitioner has not shown either of these circumstances. New York provides corrective procedures for alleged Fourth Amendment violations pursuant to Section 710.60, which entitles a criminal defendant to move to suppress illegally obtained evidence. New York's procedures have repeatedly been held constitutionally sound. *Capellan*, 975 F. 2d at 70 n.1; *Lopez v. Lee* No. 11-CV-2706, 2011 WL 6068119, at *9 (E.D.N.Y. Dec. 7, 2011); *Kelly v. Conway*, No. 10-CV-3053, 2011 WL 3555823, at *3 (E.D.N.Y. Aug. 11, 2011). The CPL provides a mechanism for requesting a *Dunaway* hearing, but allows it to be denied where "(a) [t]he motion papers do not allege a ground constituting legal basis for the motion; or (b) [t]he sworn allegations of fact do not as a matter of law support the ground alleged." *See* CPL § 710.60(3). Petitioner not only had the opportunity to take advantage of Section 710.60, but in fact did so when he filed a motion for a *Dunaway* hearing. The denial of such a hearing does not negate the fact that adequate State law procedures exist. *Gonzalez v. Superintendent, Sullivan Corr. Facility*, 761 F.Supp. 973, 976 (E.D.N.Y. 1991) ("[T]he fact that [Petitioner's] motion was not favorably entertained is not tantamount to a finding that no opportunity was available. Every denial of a motion made by a state prisoner does not amount to a deprivation of fourth amendment rights.").

Nor has Petitioner shown any "unconscionable breakdown" of process in his case. An "unconscionable breakdown" occurs when a court "failed to conduct a reasoned method of inquiry into relevant questions of fact and law." *Capellan*, 975 F.2d at 70. In the instant case, the State trial court conducted such an inquiry, but denied the motion based on its finding that Petitioner had not pled sufficient facts to support his claim of no probable cause. Thus, the process worked as intended. *See Lopez*, 2011 WL 6068119, at *9 ("The trial court's decision that [*habeas* petitioner's] conclusory allegations were insufficient to warrant an evidentiary hearing was not an unconscionable breakdown in the procedures for resolving his Fourth Amendment claim."); *see also Ortiz v. Ercole*, No. 07-CV-4667, 2010 WL 1688444, at *1 (E.D.N.Y. Apr. 26, 2010) (stating that dissatisfaction or disagreement with the outcome of a suppression motion is insufficient to establish an unconscionable breakdown violating Fourth Amendment rights); *cf. Allah v. LeFevre,* 623 F.Supp. 987, 991–92 (S.D.N.Y.1985) (describing bribery of a judge, use of torture, and use of perjured testimony as examples of what might show an "unconscionable breakdown") (citing *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir. 1977)). In sum, this Court's review of Petitioner's Fourth Amendment claim would also barred by *Stone v. Powell*, even if it were not procedurally barred. *See Kirk v. Burge*, 646 F. Supp. 2d 534, 544–45 (S.D.N.Y. 2009).

### iii. Petitioner's Mental Competence Claims Are Procedurally Defaulted

Separately, Petitioner also claims that his constitutional rights were violated because: (1) his mental illness should have been made known to the trial court and the government in a "criminal hearing"; (2) Petitioner's mental state should have been evaluated by an expert clinician in a written report, and a hearing ordered to investigate his mental state; (3) the trial court, the prosecutor, and defense counsel failed in their duties by not convening a hearing in which Petitioner's lack of mental capabilities was put on record; and (4) Petitioner's frame of mind at the

16

time of the incident should have been evaluated in a hearing prior to the court or People making a decision pertaining to the appropriate criminal charges.[9] (Dkt. 7.)

Because Petitioner never presented any of these claims to the State court, they are unexhausted. While the Court may deem them exhausted because the time for presenting such claims to the State court has now passed, they are now also procedurally barred. Thus, even though the Court may consider them exhausted, these claims are procedurally defaulted so as to preclude federal *habeas* review unless Petitioner can demonstrate cause and prejudice. *See also* discussion at *supra* p. 11. Petitioner has not done so. First, there was no cause for Petitioner's delay. Petitioner's claims about his mental fitness were available to him when he filed his appeals, and he has not identified any external factors that made it difficult or impossible for him to raise these issues.[10] Second, there was also no prejudice to Petitioner because the State trial court was, in fact, fully aware of Petitioner's mental history during the criminal proceeding. (*See, e.g.*, Dkt. 14 at ECF 56-62.) Furthermore, there is no basis to conclude that a miscarriage of justice will occur if *habeas* relief is not granted; as discussed above, there is no evidence suggesting that Petitioner is actually innocent of the crime to which he pled guilty.

---

[9] The Court notes that Petitioner appears to attempt to link his *Dunaway* hearing claim to his mental competency claim by arguing that a *Dunaway* hearing was the only vehicle for alerting the trial court to Petitioner's mental condition—and that the denial of the *Dunaway* hearing prevented the court from considering crucial evidence concerning Petitioner's mental condition both during the commission of the crime and pendency of the case. (Dkt. 7.) However, this is incorrect. The CPL law provides for a separate, parallel proceeding for defendants to use in raising issues about their mental competency, both at the time of the crime and as it relates to a defendant's fitness to stand trial. *See* CPL §§ 220.15, 730. By contrast, Petitioner's *Dunaway* hearing request was simply based on the alleged absence of probable cause to arrest him.

[10] Petitioner has not alleged cause based on ineffective assistance of counsel. In any event, such a claim would not have succeeded, given the clear record demonstrating the persistent and continuous efforts of Petitioner's trial counsel to have Petitioner found unfit to stand trial.

Even if these claims were not procedurally defaulted, the Court finds that there is no merit to any of Petitioner's claims with respect to the mental competency procedures followed in his case. Petitioner *was* evaluated by multiple psychiatrists, two of whom wrote comprehensive, thorough reports about Petitioner's condition at the time the crime was committed, which reports were in fact submitted to the State court by Petitioner himself as exhibits to his 440 Motion. (*See* Exs. B and C to Aff. in Support of 440 Motion, Dkt. 14-3 at ECF 11-15; 17-49.) The report of Dr. Lawrence Siegel, in particular, considered Petitioner's mental health history from the time he was a child, and summarized all previous available psychiatric reports. (*Id.* at ECF 17-49.) Dr. Siegel concluded: "While [Petitioner] has appeared to be mentally ill subsequent to his arrest, he was able to work and maintain a relationship prior to that time. Based upon the data available to me and my examinations of the defendant, it is my opinion that the defendant did not lack substantial capacity [at the time of the crime] due to mental disease or defect to know or appreciate the nature and consequences of his conduct or that it was wrong." (*Id.* at ECF 49.) Although a different mental health expert who examined Petitioner at the request of defense counsel, psychologist Cheryl Paradis, opined that Petitioner was not mentally competent at the time of the crime, (Dkt. 14-3 at ECF 15), it was within the trial court's discretion to instead rely on Dr. Siegel's conclusions. *Skinner v. State*, 969 N.Y.S.2d 659, 660 (App. Div. 2013) ("While there was conflicting expert testimony with respect to the need for petitioner's continued confinement, '[t]he trier of fact [was] in the best position to evaluate the weight and credibility of conflicting expert . . . testimony,' and here, the record supports the court's determination to credit the opinion of respondents' expert over that of petitioner's expert.") (quoting *State v. Donald N.*, 881 N.Y.S.2d 542, 545 (App. Div. 2009). Petitioner offers no new evidence to show that Dr. Siegel's conclusions

about Petitioner's competence were erroneous or that the trial court's reliance on these conclusions was unreasonable.[11]

## CONCLUSION

For all of the foregoing reasons, the Court finds that Petitioner has demonstrated no basis for *habeas* relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of *habeas corpus* is denied. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED:

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: October 13, 2016
Brooklyn, New York

---

[11] Although not raised by Petitioner, the Court further notes that it was proper for the trial court to permit Petitioner to plead guilty and waive his appeal rights notwithstanding the multiple and periodic findings that Petitioner was not fit stand trial. Guilty pleas and rights waivers made at a time when the defendant is found to be mentally fit are valid and enforceable, regardless of any prior or subsequent periods of mental incapacity. *See Bastien v. William*, No. 03-civ-5749, 2004 WL 2978283 (S.D.N.Y. 2004) (finding plea valid even though defendant was twice found incompetent prior to pleading guilty); *Royster v. Perez*, No. 08-CV-131, 2009 WL 1505278 (E.D.N.Y. May 28, 2009) (even when the trial court does not inquire into defendant's history of mental illness or medication regime, a guilty plea can be made knowingly and voluntarily). Additionally, "statements at a plea allocution carry a strong presumption of veracity," *United States v. Doe*, 537 F.3d 204, 212 (2d Cir. 2008), and "it is well-established that some degree of mental illness cannot be equated with incompetence to stand trial." *United States v. Vamos*, 797 F.2d 1146, 1150-1151 (2d Cir. 1986); *see also Royster*, 2009 WL 1505278 at *4 ("[T]he state court's factual determination that the petitioner's plea was voluntary is presumed to be correct absent clear and convincing [evidence] to the contrary.") (citing 28 U.S.C. § 2254(e)(1)).